James M. McDonnell, Esq. (Bar ID #030572001)
Beth L. Braddock, Esq. (Bar ID #060492013)
JACKSON LEWIS P.C.
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, New Jersey 07960-6834
(973) 538-6890
ATTORNEYS FOR DEFENDANT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LORETTA URBAN-CRITCHETT,

        Plaintiff,

    v.

CATHOLIC FAMILY & COMMUNITY
SERVICES,

        Defendants.

: Civil Action No.:
:
:
:
:
:
: **NOTICE AND PETITION FOR**
: **REMOVAL OF CASE FROM THE**
: **SUPERIOR COURT OF NEW JERSEY,**
: **LAW DIVISION, PASSAIC COUNTY**
:

TO:   Clerk                        Robyne D. LaGrotta, Esq.
       United States District Court for the   LaGrotta Law, LLC
       District of New Jersey           900 Lanidex Plaza, Suite 225
       MLK Jr. Federal Bldg. & Courthouse  Parsippany, NJ 07054
       50 Walnut Street
       Newark, NJ 07102

Defendant, Catholic Family & Community Services ("Defendant"), pursuant to 28 U.S.C.

§§ 1331, 1441, and 1446, respectfully submits this Notice and Petition For Removal of a Case

from the Superior Court of New Jersey, Law Division, Passaic County, bearing Docket No. L-

334-18, and as grounds for removal allege as follows:

    1.    On January 30, 2018, Loretta Urban-Critchett ("Plaintiff") filed a civil action

captioned Loretta Urban-Critchett v. Catholic Family & Community Services, Docket No. PAS-

L-334-18, in the Superior Court of New Jersey, Law Division, Passaic County. A true and

correct copy of the Complaint in that action is attached hereto as Exhibit A.

2.     Defendant was served with a copy of the summons and complaint on February 7, 2018, which is within thirty (30) days of the filing of this notice and petition for removal. The summons and complaint were the initial pleadings received by Defendant setting forth the claims upon which Plaintiff's action is based.

3.     This notice and petition is timely filed within the provisions of 28 U.S.C. § 1446. Defendant has effected removal within thirty (30) days of receipt by it of a paper from which it could first be ascertained that this action is removable. See 28 U.S.C. § 1446.

4.     No proceedings have taken place in the state court action. Defendant has not served an answer or responsive pleading to Plaintiff's Complaint or made any appearance or argument before the Superior Court of New Jersey.

6.     In the Complaint, Plaintiff alleges, *inter alia*, that Defendant violated her rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.   See Exhibit A, Complaint, Second Count.

7.     Accordingly, this action is removable to this Court on the ground that original jurisdiction over Plaintiff's claims exists pursuant to 28 U.S.C. § 1331, by virtue of its federal question jurisdiction arising out of Plaintiff's claims under the FLSA, 29 U.S.C. § 201, *et seq*.

8.     Pursuant to 28 U.S.C. §1441(a), this action may be removed to this Court because it is founded, in part, on claims or rights arising under the laws of the United States.

9.     Pursuant to 28 U.S.C. §§ 1367 and 1441(c), this Court has supplemental jurisdiction over Plaintiff's additional causes of action, retaliatory discharge in violation of public policy and the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq*., intentional infliction of emotional distress and gender discrimination in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-1 *et seq*.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1441(a).

11.     Defendant files this Notice of Removal without waiving any defenses to the claim(s) asserted by Plaintiff, including improper service of process, or conceding that Plaintiff has pled claim(s) upon which relief can be granted.

12.     Pursuant to 28 U.S.C. § 1446(d), Defendant has given written notice of the removal of this action to all adverse parties, and has filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Passaic County.

WHEREFORE, Defendant respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Passaic County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960-6834
(973) 538-6890

Dated:  March 6, 2018          By:     /s/ James M. McDonnell
                                       James M. McDonnell
                                       Beth L. Braddock
                                       ATTORNEYS FOR DEFENDANTS

416858
4827-6339-5421, v. 1

3

# EXHIBIT A

Robyne D. LaGrotta, Esq.-N.J. Attorney ID#020101988
LAGROTTA LAW, LLC
900 LANIDEX PLAZA, SUITE 225
PARSIPPANY, NEW JERSEY 07054
PHONE # (973) 973-585-7955       FAX # (973) 585-7956
ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| LORETTA URBAN-CRITCHETT | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: PASSAIC COUNTY DOCKET NO.: PAS-L-000334-18 |
| Plaintiff, | |
| vs. | Civil Action |
| | **SUMMONS** |
| CATHOLIC FAMILY & COMMUNITY SERVICES, | |
| Defendants | |

FROM THE STATE OF NEW JERSEY
TO THE DEFENDANT NAMED ABOVE:       **CATHOLIC FAMILY & COMMUNITY**
                                    **SERVICES**

        The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or

motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

MICHELLE M. SMITH, ESQ.
Clerk of the Superior Court

DATED:  January 31, 2018                 *S/ Michelle M. Smith*

**NAME OF DEFENDANT TO BE SERVED:**
**ADDRESS OF DEFENDANT TO BE SERVED:  CATHOLIC FAMILY & COMMUNITY**
**SERVICES**
**24 DeGrasse Street**
**Paterson, NJ  07505**

Robyne D. LaGrotta, Esq.-N.J. Attorney ID#020101988
LAGROTTA LAW, LLC
900 LANIDEX PLAZA, SUITE 225
PARSIPPANY, NEW JERSEY 07054
PHONE # (973) 973-585-7955      FAX # (973) 585-7956
ATTORNEY FOR PLAINTIFF

---

|  |  |
|---|---|
| LORETTA URBAN-CRITCHETT | SUPERIOR COURT OF NEW JERSEY |
|  | LAW DIVISION: PASSAIC COUNTY |
| Plaintiff, | DOCKET NO.: |
| vs. | Civil Action |
| CATHOLIC FAMILY & COMMUNITY SERVICES, | COMPLAINT |
| Defendants | |

Plaintiff, Loretta Urban-Critchett, by way of Complaint against the Defendant, states:

## FIRST COUNT

1.    Plaintiff, Loretta Urban-Critchett, (hereinafter referred to as "Plaintiff") is an individual residing at 21 Lounsberry Hollow Rd, Sussex, Sussex County, New Jersey 07462.

2.    Defendant, Catholic Family & Community Services (hereinafter referred to as "Defendant") is a Catholic Charities Agency in the dioceses of Paterson, located at 24 DeGrasse Street, Paterson, Passaic County, New Jersey 07505.

3.    Plaintiff was hired by Defendant on or about March 1, 2015, as Human Resources Coordinator at a starting salary of $45,000.00. Plaintiff was promised that on July 1, 2015, when the new fiscal year began, she would be promoted to Human Resources Director and her salary increased to $80,000.00 per year. Plaintiff was advised that the initial starting salary was lower because the job title would change from Human Resources Coordinator to Human Resources

Director and that the Human Resources Director was terminated and they wanted to make the termination look legitimate. As a concession, Plaintiff was also promised that 4 weeks of vacation would be available immediately upon hiring. Upon information and belief, Plaintiff was advised by the Executive Director, Diane Silbernagel and  Bob Jacobs, that the former Human Resources Director, Vinny Torres was terminated, as he was suspected to be a homosexual man in a Catholic organization.

4.    Some time in May or June, 2015, there were several reports of problems with employees at the Mount Saint Joseph's Children Center at 123 Shepherd Lane, Totowa.  These problems included an employee throwing hot coffee on a student in anger, another staff member punched a child in the face, overnight staff running a fight club, overnight staff threatening other employees who blew the whistle on the illegal activities, and the rape of one student by another student in a van with employees in it and, again, in the boys bathroom at the facility while employees should have been supervising.

5.    Plaintiff went to the facility in June, 2015, to investigate the coffee incident. While there, Plaintiff was advised regarding the fight club situation.  Plaintiff addressed this with Diane Silbernagel, the former Executive Director, who advised Plaintiff of the rape incident and that Ms. Silbernagel would hire a private investigator.

6.    Plaintiff called Dennis Butler, Director of Human Resources for the Paterson Diocese, regarding the rape incident, and Mr. Butler failed to act on the rape incident.  He also informed Plaintiff to have Ms. Silbernagel terminate the employee who threw hot coffee on a child. Ms. Silbernagel refused to terminate the employee.

7.    Many of the staff members of the Mount Saint Joseph's Children Center began to leave the facility because they feared for what was going on there.  Several of the counselors, two

nurses, a principal, and several teachers all left approximately the same time, seeing the issues going on there. This left large holes in the staffing at the facility. During a visit, Plaintiff witnessed a child threaten another child with a large piece of concrete, and then throwing the concrete over the child's head, hitting the slide. The staff members present did not respond to the loud noise caused by the incident. When plaintiff reported this to Sr. Lois, the Nun in charge of the facility, the plaintiff was told that she did not witness what she had witnessed.

8.    Plaintiff went to the location to assist with the interviewing perspective staff members. Plaintiff attempted to streamline the interview process so that they could hire staff more quickly. Plaintiff was stonewalled in her attempts by the Director of Mount Saint Joseph's, Sister Lois.

9.    While at Mount Saint Joseph, Plaintiff witnesses acts of neglect and verbal abuse by staff on children who live there. Plaintiff reported this directly to Sister Lois, but Sister Lois refused to act.

10.    While walking up the stairs, Plaintiff overhead a female staff member complaining that a male staff member's wife was coming out of rehab and this staff member had to cover his shifts. The female staffer was screaming in the hallway that the male staffer's wife was a drug addict and it was not fair that she had to cover for him in a loud enough voice for anyone to hear. Plaintiff then asked the staffer to follow her to the manager's office, Amber Huq. Plaintiff advised Ms. Huq what was said and that it was against policy for staff to be talking about other staff member's family medical issues. Plaintiff and Ms. Huq discussed policy with the staffer and sent her out of the office. Plaintiff and Ms. Huq attempted to let Sister Lois know that they wanted to write a warning to the staffer, but she could not be located. They contacted Dennis Butler and Diane Silbernagel to get approval for the write-up. They approved and the write-up was issued.

-3-

11.     When Sister Lois found out that a write-up had been issued without her consent, she threw a desk telephone at Amber Huq, then called Diane Silbernagel and advised her that Plaintiff was banned from Mount Saint Joseph's, and Diane agreed compromising Plaintiff's position in the Agency.

12.     While at the facility, it also came to Plaintiff's attention that they were transporting students without the proper C.D.L. licensing.  Plaintiff reported this to Diane Silbernagel and was told numerous times that Ms. Silbernagel would handle the issue, but Ms. Silbernagel never addressed it before the close of the facility.

13.     Plaintiff commented that if they had acted on prior complaints sooner, the rape incident might not have happened; which caused Plaintiff to fall out of favor with Ms. Silbernagel.

14.     Plaintiff's review was done several weeks later in late July.   At this review, Defendant reneged on the salary agreement and only offered Plaintiff $500.00 extra per month and was told that she could leave if she did not like it.

15.     Upon information and belief, three individuals held the position of Human Resources Director in the past.  The male was paid in the $80,000.00 range, and the two females made considerably less, one in the $60,000.00 range and one in the $40,000.00 range.  The male was S.H.R.M-C.P certified, which was a higher credential than the two females, but less qualified than Plaintiff who is S.H.R.M.-S.C.P. certified, the highest accreditation offered by the Society for Human Resources.

16.     Plaintiff was classified as a exempt employee for purposes of overtime.  In some circumstances, she was also categorized as a non-exempt employee in her personnel file.  Plaintiff was not paid the overtime she was entitled to as a non-exempt employee.  Plaintiff spent extensive time trying to advise management regarding the proper characterization of  employees to make

-4-

sure they were properly designated as exempt or non-exempt. This was brought to Diane Silbernagel's attention, but she refused to fix the problem stating that they could not afford to pay the employees properly and advised Plaintiff to adjust the categorizations in the computer but to continue paying them as exempt salary employees.

17.   Plaintiff advised Ms. Silbernagel that this was in violation of the law and could subject the Defendant to fines and penalties. Ms. Silbernagel ignored the Plaintiff's warnings.

18.   Ms. Silbernagel next advised staff that they were not allowed to show more than forty (40) hours on their time sheet, regardless of how many hours they worked. They were advised that not only would they not be paid for their time, but there would be retribution if they showed the correct hours on their time sheet. Plaintiff received manual paper time sheets that had eight (8) hours for each employee Monday through Friday for every employee, but was still receiving complaints from certain employees that they were not being paid properly. Plaintiff also had time clock records that showed more hours than were being claimed on the paper time sheets.

19.   Defendant also was not paying chore workers travel time between houses to keep those employees at part-time status; saving the Agency money, which was improper. In addition to this, Plaintiff brought to Ms. Silbernagel's attention a disabled staff member that had been hired as a chore worker. This staff member could not drive as a result of his disability, which was known to the Defendant at the time of hire. Ms. Silbernagel refused to pay the employee for his travel time. When the employee told her it was illegal, she remarked that it was not a reasonable accommodation and she would not do it. She then suggested to the manager that the staff member be taken off of the schedule. Plaintiff brought this to Ms. Silbernagel's attention and was advised that it was not Ms. Silbernagel's problem. Plaintiff also advised of a breach of confidentiality in reference to staff members writing client's names as well as case notes on their timesheets; which

-5-

could be audited by the state without notice at any time and should only be seen by the case manager and chore workers.

20.    Plaintiff relayed this information to Mr. Butler several times over the next several months. On March 17, 2016, Mr. Butler called and advised Plaintiff that the Diocese attorney did not like Ms. Silbernagel and wanted to get rid of her. He told Plaintiff that he had told Ken Maloney about the incidents the plaintiff had been informing himself about for months and Ken wanted Dennis to take a formal statement about the FMLA issue, as well as the timesheet and payroll issues so that this information could be used to terminate Silbernagel.

21.    Plaintiff went to the diocese and reported the time clock issues, FMLA compliance issues, the immigration lawyer performing his own private business out the CFCS office, staff coming to work drunk and Plaintiff being told she was not permitted to test and or reprimand the employee, the incidents at MSJ including the fight club, the incident where a staff member threw coffee at a child in anger, the rape incidents, issues of hiring staff with criminal backgrounds to work in a school environment contrary to the law, a manager discriminating against a potential employee by telling her she was too old to drive to work as well as unable to climb the stairs due to her age, as well as all other aforementioned incidents. Plaintiff was contacted by the Totowa Police department prior to this meeting, on March 17. After the meeting with Ken Maloney and Dennis Butler, Plaintiff traveled to the Totowa Police department to make an official report a day later. Following the report made to Mr. Butler and Mr. Maloney by the Plaintiff, Diane was terminated shortly after.

22.    Plaintiff was called in on another occasion to speak to Dennis Butler and Ken Maloney, the Diocese attorney, to advise Plaintiff on how to proceed. At the next meeting, they were joined by Monsignor Mahoney, where disclosure took place in reference to the rape incidents

–6–

and also the other issues going on throughout the agency, which Mr. Butler had been apprised of on multiple occasions, but yet failed to act upon. They asked Plaintiff if she thought Bob Jacobs could be the acting Executive Director. Plaintiff let them know at that time that there were major discrepancies in the accounting department. Plaintiff advised them that at the Father English location, money was being paid and tuition was not making it to the bank accounts. The accounting department never had an idea as to how much money was owed to them, because they were not tracking it across all of the facilities.

23. Plaintiff also advised management that the accounting department was coding staff members from one department into another department, committing fraud with the grant money they were receiving.

24. Ms. Silbernagel was terminated. The day after she was terminated, Mr. Jacobs brought Plaintiff into his office and told Plaintiff that she was trying to destroy the Agency by blowing the whistle on all of the illegal activities taking place at the Agency. An acting director, Tom Barrett, was brought in by the Diocese, who treated Plaintiff as a troublemaker and advised Plaintiff she was just an administrative assistant. Plaintiff was then banned from attending any management meetings, and systematically demoted. Barrett then brought in the HR Director and executive director of Department for Persons with Disabilities to do a training/brainstorming session, treating the Plaintiff as if she knew nothing about HR. A survey was sent to the HR department asking how operations could be improved. Suggestions included issues brought up in the brainstorming session, as well as hiring a director that could make important decisions on the fly, further solidifying the Plaintiff's demotion.

25. On May 8, 2016, Plaintiff contacted Dennis Butler to express concerns of retaliation. Butler then told Plaintiff that Bob Jacobs told Tom Barrett, Ken Maloney and Msgr.

--7--

Mahoney that Plaintiff had no experience prior to working at CFCS. Plaintiff also told Mr. Butler that she had a received an email from the Director of the Department of Persons with Disabilities (DPD) that stated "and HR director should be hired so that decisions can be made quickly." Plaintiff reminded Butler that she was hired as the director, with a different title, that she reported many issues to the executive director, whom refused to act, and that she was being retaliated against. Plaintiff also relayed to Butler that Barrett told her she was only an administrative assistant and not allowed to attend department head meetings and no longer a member of the XL team. Plaintiff pointed out that if she is being demoted to an administrative assistant, she needs to be paid for all of the overtime she had worked during her tenure at CFCS. Butler replied that he was attempting to assist Plaintiff behind the scenes, but made it known that the Plaintiff was being used as a scapegoat for all issues reported by Plaintiff to the diocese. Butler relayed scuttlebutt from the Diocese stating that there were a lot of issues coming up and that Plaintiff was unable to handle them. Meanwhile Barrett had directed that all issues come directly to him, and completely removed Plaintiff from all communications regarding any issues. Plaintiff stated that this was obviously retaliation. Butler agreed, and stated that he was no longer able to communicate with Plaintiff. Plaintiff questioned why she was promised protection from the Diocese if she wasn't going to receive it. Butler responded, "I really can't help you anymore. I know this is not ideal timing because of your condition, but you should really look for another job."

26. Approximately two months after Plaintiff began employment with the Defendant, she had her first health-related issue. Her chest became very tight with a lot of pain, shortness of breath and brain-fog and her right eye went completely black. She was referred to a neurologist, ophthalmologist and a cardiologist. Plaintiff continued to suffer a multitude of symptoms, which were caused by her job location, where she often had to spend hours working in the basement with

-8-

mold covered walls and standing sewer water. Plaintiff was advised that her medical problems were all caused by the environmental condition that she worked in.

27. Plaintiff suffered from asthma, back pain, reduced neck movement, numbness in her right upper to mid-back, numbness in her legs, especially her left leg, pain in her hips/left hip joint, toe pain in the left second and right big toes, fatigue, joint pain in her ankles, knees, shoulders, right elbow, knuckles, memory loss, and cloudy brain, abnormal pain, left and lower right quadrant and unexplained weight gain, continued muscle weakness, along with other continued medical issues.

28. After seeing over a dozen doctors, Plaintiff learned she had total body inflammation and had been exposed to toxic black mold while having a weakened immune system from Lyme Disease, as well as being exposed to heavy metals. The mold caused hypersensitivity pneuminitis and hyposensitized her body to all allergens.

29. Plaintiff learned that she was pregnant, and she was diagnosed with gestational diabetes at only ten (10) weeks, which is extremely early. On May 24, 2016, her sugar crashed and she lost consciousness at work. She was taken to the ER at Chilton Hospital by Maria DellaPaz, her co-worker. At that time, she was advised that the asthma was related to her pregnancy and no significant testing was performed. Plaintiff spoke to her obstetrician and pulmonary doctor and were informed by both that her breathing problem was related to her job where she often had to spend hours working in the basement with mold covered walls and standing sewer water, as well as inhaling construction dust from the improperly covered church outside Plaintiff's office window. The pulmonologist agreed that this was the issue and wrote Plaintiff out of work on disability, as it was not a safe environment for Plaintiff or the baby. The initial

-9-

write-out was for thirty (30) days, though Plaintiff was not allowed to go back to work until after the baby was born.

30.    After the baby was born, Plaintiff's breathing did not improve.  If she was off prednisone for 24 hours, the asthma was completely out of control, along with the other symptoms, such as back pain, reduced neck movement, numbness in her right upper to mid-back, numbness in her legs, especially her left leg, pain in her hips/left hip joint, toe pain in the left second and right big toes, fatigue, joint pain in her ankles, knees, shoulders, right elbow, knuckles, memory loss, and cloudy brain, abnormal pain, left and lower right quadrant and unexplained weight gain, continued muscle weakness, along with other continued medical issues.

31.    In November of 2016, CFCS sent out an internal vacancy announcement for the position of Director of Compliance and Human Resources. Plaintiff was not notified that this position was open. Plaintiff was contacted by Maria DeLaPaz on her personal phone that something was going on and Plaintiff needed to access her CFCS email. Department manager Elizabeth Dworak, separate and apart from DeLaPaz,  forwarded Plaintiff a copy of the internal vacay email on Friday, Nov 4th, 2016, to Plaintiffs personal email after calling to ask if Plaintiff resigned. Dworak called Plaintiff and explained that she forwarded the email because she felt the agency was giving away Plaintiff's position so that she would have no management authority upon returning from her maternity leave. Plaintiff applied and received a confirmation letter from the new Executive Director, Chris Barton. An interview was scheduled. The panel of interviewers included Rhonda Sheuring, Maria DeLaPaz, who was Plaintiff's assistant, Dennis Butler, and John Jacobs, son of Bob Jacobs. The interview went well. Plaintiff spoke with Rhonda Schering several days later and was told she was by far the most qualified candidate and that she felt there was something retaliatory about the way Plaintiff was being treated. Maria DeLaPaz also told the

-10-

Plaintiff that she commented to the committee that she felt what was happening was illegal. DeLaPaz was told that if she liked her job she should keep her mouth shut. On Nov 23, 2016, Chris Barton sent Plaintiff an email that said "The first round of interviews did not yield a sufficiently competitive pool of qualified candidates to move forward to the second interview. Our goal was to have at least 4 qualified candidates for round 2, we are temporarily postponing interviews..." Email went on to say that Plaintiff would be notified when this happened. Plaintiff was never notified.

32.    In the beginning of December, CFCS stopped making payments to the elective insurance companies towards Plaintiff's benefits, even though Plaintiff was still sending checks to CFCS for these elected benefits. It has never been resolved where the money paid went to. Plaintiff was advised to pay the insurance companies directly, which cost the Plaintiff $450 over what she had already paid to CFCS on behalf of these elected benefits. CFCS never informed Plaintiff they stopped paying. Plaintiff found out months later after receiving a termination letter regarding the benefits. This was a retaliatory action. Directly after termination, Plaintiff was contacted by India Smalls, who had been hired as the director of HR and Compliance, to tell her that Plaintiff's belongings had been mailed to her. Plaintiff received a box of personal items that were not hers, she was not asked to come to the agency and clean out her desk and because of that, many of her personal effects were not in the box. Plaintiff emailed DeLaPaz saying what happened and was contacted by Small again, via email, stating she was sending the rest of it and that her SHRM certificates and personal pictures were missing. Plaintiff was never contacted by the agency about a second interview. All of these qualify as retaliatory actions against the Plaintiff for exposing issues within the agency, which was her job.

-11-

33. Plaintiff contacted the Paterson Health Department, the Passaic County Health Department, the New Jersey Department of Environmental Protection, the Center for Disease Control and OSHA regarding the conditions at 24 DeGrasse Street. Each agency stated that there was no standard levels for mold in the workplace and none of them would claim jurisdiction for the issue. After talking to Lisa Levee, who is a manager at OSHA, she said she would send a letter to the Agency letting them know that a complaint had been made and that they needed to have air quality testing performed and submitted to OSHA.

34. Plaintiff informed her co-worker, Maria DellaPaz-Malave on February 13, 2017, that she was exposed to toxic mold at that location.

35. Plaintiff then received a termination letter dated February 15, 2017, received via certified mail at the post office on February 27, 2017.

36. Plaintiff's son Harrison was born with lead level 3 as a result of the contamination.

37. Due to Plaintiff's reporting of the illegal activities conducted by Defendant and reporting the unsafe working conditions, Plaintiff was terminated. The termination of Plaintiff was a direct result of the reporting of the environmental hazards at Plaintiff's place of employment, along with her reporting of Defendant's illegal activities.

38. The New Jersey Conscientious Employee Protection Act (N.J.S.A. 34:19-1 to 34:19-8 prohibits all public and private employers from retaliating against employees who disclose, object to, or refuse to participate in certain actions that the employees reasonably believe that are illegal or in violation of public policy.

39. Plaintiff was terminated in violation of the New Jersey Conscientious Employee Protection Act.

**WHEREFORE**, Plaintiff, demands judgment against the Defendant for money damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and any other relief the Court deems equitable and just.

## SECOND COUNT

1. The Plaintiff repeats and realleges each and every allegation contained in the First Count of the Complaint as if more fully set forth at length herein.

2. The Fair Labor Standards Act establishes minimum wage, overtime pay, record keeping, and child labor standards affecting full-time and part-time workers in the private sector and in federal, state, and local governments.

3. Defendant treated Plaintiff as exempt from overtime when, in fact, Plaintiff should not have been classified as exempt and should have been entitled to overtime.

4. Defendant failed to pay Plaintiff overtime in conformance with the Fair Labor Standards Act.

**WHEREFORE**, Plaintiff, demands judgment against the Defendant for money damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and any other relief the Court deems equitable and just.

## THIRD COUNT

1. The Plaintiff repeats and realleges each and every allegation contained in the First and Second Counts of the Complaint as if more fully set forth at length herein.

2.     Plaintiff notified Defendant on multiple occasions regarding the conditions in the basement at her work location.  Plaintiff advised Defendant regarding the mold and the standing water, and Defendant refused to correct the working conditions.

3.     Defendant caused intentional infliction of emotional distress to Plaintiff by failing to repair the work conditions, thereby causing extreme medical issues to Plaintiff as a result of the toxic work environment.

WHEREFORE, Plaintiff, demands judgment against the Defendant for money damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and any other relief the Court deems equitable and just.

## FOURTH COUNT

1.     The Plaintiff repeats and realleges each and every allegation contained in the First Second and Third Counts of the Complaint as if more fully set forth at length herein.

2.     Defendant paid male employees with fewer qualifications more than Plaintiff and other women with comparable job titles.

3.     Defendant had a policy which required employees who were not the main wage earners of their family to pay more for their health insurance.  This affected more women then men which was discriminatory.

4.     Plaintiff was subjected to discrimination in violation of the New Jersey Law against Discrimination, N.J.S.A. 10:5-1 et seq.

WHEREFORE, Plaintiff, demands judgment against the Defendant for money damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and any other relief the Court deems equitable and just.

-14-

## FIFTH COUNT

1.  The Plaintiff repeats and realleges each and every allegation contained in the First Second, Third and Fourth Counts of the Complaint as if more fully set forth at length herein.

2.  Plaintiff was terminated for reporting the illegal activities conducted by Defendant and reporting the unsafe working conditions.  This termination was contrary to public policy.

3.  Plaintiff was wrongfully discharged in violation of the law as stated in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).

WHEREFORE, Plaintiff, demands judgment against the Defendant for money damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and any other relief the Court deems equitable and just.

LAGROTTA LAW, LLC
Attorney for Plaintiff

DATED: January 30, 2018

By:
ROBYNE D. LAGROTTA, ESQ.

## DEMAND FOR INSURANCE AGREEMENTS

PLEASE NOTE that pursuant to Rule 4:10-2, Plaintiffs demands a full and true copy of any and all insurance agreements which may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy judgment.

-15-

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

LAGROTTA LAW, LLC
Attorney for Plaintiff

DATED:  January 30, 2018

By:_____
ROBYNE D. LaGROTTA, ESQ.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Robyne D. LaGrotta, Esq., is hereby designated as trial counsel for the Plaintiff, in the above matter.

LAGROTTA LAW, LLC

DATED:  January 30, 2018

By:_____
ROBYNE D. LaGROTTA, ESQ.

## CERTIFICATION PURSUANT TO RULE 1:38-7

I hereby certify that the certified personal confidential identifiers have or will be redacted from all documents submitted herewith in accordance with R. 1:38-7 (b).

LAGROTTA LAW, LLC

DATED:  January 30, 2018

By:_____
ROBYNE D. LaGROTTA, ESQ.

-16-

## RULE 4:5-1 CERTIFICATION

THE UNDERSIGNED hereby certifies that:

1.   I am an attorney at law of the State of New Jersey.  In that capacity, I am familiar with the facts of this case.

2.   To the best of my knowledge, information and belief, our investigation and investigation on behalf of our client has disclosed that the matter in controversy is not the subject of any other court or arbitration proceeding and that no other such proceeding is contemplated, nor has it disclosed any other parties who should be joined in the within action.  The only exception is a workers compensation complaint which was filed against Defendant by Plaintiff.

3.   I am aware of my continuing obligation during the course of this litigation to file and serve on all other parties and with this Court an amended Certification if there is a change in the facts stated in this Certification.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

LAGROTTA LAW, LLC

DATED:  January 30, 2018

By:_____
ROBYNE D. LaGROTTA, ESQ.

C:\Law File Directory\Urban Critchett\17110-Catholic Family\Complaintrevised.01.29.18.doc